**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

DAVID HALL CRUM,                 )
                                   )
              **Plaintiff,**        )
**v.**                              )       **Civil Action No. 5:20-00655**
                                   )
WARDEN D.L. YOUNG, *et al.*,     )
                                   )
            **Defendants.**      )

**PROPOSED FINDINGS AND RECOMMENDATION**

On October 7, 2020, Plaintiff, acting *pro se* and incarcerated at FCI Beckley, filed his Motion to Proceed *in Forma Pauperis* and a Complaint claiming entitlement to relief pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document Nos. 1 and 2.) By Order enter on October 8, 2020, the undersigned directed Plaintiff to amend his Complaint to specifically set forth his constitutional claims and state specific facts as to how each defendant violated his rights. (Document No. 6.) Plaintiff's Amended Complaint was filed on November 2, 2020. (Document No. 10.) In his Amended Complaint, Plaintiff named the following as Defendants: (1) Warden D.L. Young; (2) Case Manager Jim Craddock; (3) Supervisor Case Manager Ms. O'Dell; and (4) Unit Manager Ms. Stimpson. (Id.) Plaintiff complains that "D.L. Young allowed the Case Management, Coordinator's Office through Ms. O'Dell, and/or other workers in that Office to directly retaliate against Plaintiff for a habeas corpus filing against one of their friends about 15 years ago at this

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

institution (a Mr. Michael Snow)." (Id.) In support, Plaintiff alleges that "Ms. O'Dell and her party intentionally falsified documents placing the Plaintiff here at Beckley illegally depriving him of pre-release status and placing his life in danger because there were no medical records that followed." (Id.) Plaintiff concludes that "Mr. Craddock and Ms. Stimpson supported this." (Id.) Plaintiff requests monetary relief. (Id., p. 5.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's Sentence Monitoring Computation Data As of 12-11-2019 (Id., p. 5.); (2) A copy of Plaintiff's Memorandum stating that pursuant to his Reentry Program, he should be placed at FCI Petersburg closer to his release area (Id., p. 7.); and (3) A copy of Plaintiff's "Individual Reentry Plan – Program Review" dated June 25, 2020 (Id., pp. 8 - 9.).

On January 25, 2021, Plaintiff filed his "Motion for a Temporary Federal Injunction and a Mandatory Updated Docketing Statement." (Document No. 11.) Plaintiff complains that his legal mail is being held for two weeks. (Id.) Therefore, Plaintiff requests that the Court prevent "tampering with the legal mail." (Id.)

On February 25, 2021, Plaintiff filed additional Exhibits in support of his Complaint: (1) A copy of a "Rejection Notice – Administrative Remedy" dated February 2, 2021, from the Administrative Remedy Coordinator with the Mid-Atlantic Regional Office regarding Remedy ID No. 1067312-R1 (Document No. 15, p. 3.); (2) A copy of Plaintiff's Custody Classification Form dated January 6, 2021 (Id., p. 4.); and (3) A copy of the contact information for Assistant United States Attorney Patricia McBride (Id., p. 5.).

## THE STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to screen each case in which a plaintiff seeks to proceed *in forma pauperis*, and must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant who is immune from such relief. Pursuant to 28 U.S.C. § 1915A, a similar screening is conducted where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. This screening is done prior to consideration of an Application to Proceed Without Prepayment of Fees and Costs, and notwithstanding the payment of any filing fee. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett

3

v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## DISCUSSION

1.    **Bivens:**

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. However,

<u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reingold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

### A.    Retaliation:

Plaintiff appears to argue that Defendants violated his constitutional rights by retaliating against Plaintiff for pursuing a lawsuit against a BOP employee. (Document No. 10.) Specifically, Plaintiff argues that Defendants have improperly caused Plaintiff to be incarcerated at FCI Beckley instead of FCI Petersburg. (<u>Id.</u>) As stated above, a <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See</u> <u>Bivens</u>, 403 U.S. at 395 -97, 91 S.Ct. at 1999. <u>Bivens</u> core premise is to deter individual officers' unconstitutional acts. <u>Correctional Services Corp v. Malesko</u>, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend <u>Bivens</u> to confer a right of action for damages against private entities acting under the color of federal law). In <u>Bivens</u>, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. <u>Bivens</u>, 403 U.S. at 396, 91 S.Ct. 1999. In the years following the decision in <u>Bivens</u>, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, <u>Davis v. Passman</u>, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, <u>Carlson v. Green</u>, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since <u>Carlson</u>, the Supreme Court has consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. at 484-86, 114 S.Ct. 996 (declined to extend <u>Bivens</u> to permit suit against a federal agency); <u>Holly v. Scott</u>, 434 F.3d 287, 290 (4th

Cir. 2006)(declining to extend <u>Bivens</u> to an Eighth Amendment claim against employees of a privately operated prison); <u>Lebron v. Rumsfeld</u>, 670 F.3d 540 (4th Cir. 2012)(declining to extend <u>Bivens</u> in a military context). In 2017, the Supreme Court made clear the very limited scope of <u>Bivens</u> actions and that "expanding the <u>Bivens</u> remedy is now a disfavored judicial activity." <u>Ziglar v. Abbasi</u>, ___ U.S. ___, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted <u>Bivens</u> claim is not one of the three <u>Bivens</u>-type actions previously recognized by the Supreme Court, closer scrutiny is required. <u>Id.</u>

In <u>Abbasi</u>, the Supreme Court set out a framework for determining whether a claim presents a "new <u>Bivens</u> context." <u>Abbasi</u>, 137 S.Ct. at 1860. As stated above, the Supreme Court has recognized a <u>Bivens</u> remedy in only three cases: (1) A Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. <u>Id.</u> at 1854-55(citations omitted). The <u>Abbasi</u> Court explained that "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." <u>Id.</u> at 1859. Although the <u>Abbasi</u> Court did not provide "an exhaustive list of differences that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id. at 1859-60. In the instant case, Plaintiff appears to allege that Defendants retaliated against him for filing a lawsuit against another BOP employee in violation of his First Amendment rights. The mere fact that Plaintiff alleges a violation of a constitutional right does not conclusively establish that Bivens extends to Plaintiff's constitutional claim. Thus, the undersigned must first determine whether Plaintiff's retaliation claim presents "a new Bivens context."

The Supreme Court has "never held that Bivens extends to First Amendment claims." Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, n. 4, 182 L.Ed.2d 985 (2012)("We have never held that Bivens extends to First Amendment claims."); also see Correctional Services Corporation v. Malesko, 534 U.S. 61, 67-68, 22 S.Ct. 515, 519-20, 151 L.Ed.2d 456 (2001)(noting that "we declined to create a Bivens remedy against individual Government officials for a First Amendment violation arising in the context of federal employment"); Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)("we have not found an implied damages remedy under the Free Exercise Clause"); Leibelson v. Collins, 2017 WL 6614102, * 8 (S.D.W.Va. Dec. 27, 2017)(J. Berger)("[I]t is not clear that Bivens may be extended to First Amendment claims."). In Ashcroft v. Iqbal, the Supreme Court stressed that "we have declined to extend Bivens to a claim sounding in the First Amendment." Iqbal, 556 U.S. at 676, 129 S.Ct. at 1948. The Iqbal Court, however, noted that it assumed without deciding that respondent's First Amendment claim was actionable under Bivens because petitioners did not assert the above argument. Id.; also see Wood v. Moss, ___ U.S. ___, 134 S.Ct. 2056, 2067, 188 L.Ed.2d 1039 (2014)("[W]e have several times assumed without deciding that Bivens extends to First Amendment claims. We do so again in this case.") The undersigned further acknowledges that just prior to the Supreme Court's decision in Abbasi, the Fourth Circuit clarified that inmates have a clearly established First Amendment right to file prison grievances free from retaliation. See Martin v. Duffy, 858 F.3d 239 (4th Cir. June 1,

2017)("this Court held that an inmate's 'right to file a prison grievance free from retaliation was clearly established under the First Amendment' at least as far back in time as 2010")(citing Booker v. South Carolina Department of Corrections, 855 F.3d 533, 545 (4th Cir. April 28, 2017)). Importantly, both Martin and Booker were Section 1983 actions and the issue of whether Bivens extends to the First Amendment was not addressed by the Fourth Circuit. Id. Subsequently, the Fourth Circuit issued an unpublished opinion in Patton v. Kimble reversing a district court's dismissal of an inmate's Bivens action alleging a First Amendment retaliation claim. Patton v. Kimble, 717 Fed.Appx. 271 (4th Cir. 2018). The Fourth Court determined that the district court erred in finding that the inmate failed to state a First Amendment retaliation claim in light of its decision in Booker. Id. at 271-72. The Fourth Circuit, however, did not address the issue of whether Bivens extends to the First Amendment. Id. Recently, the Fourth Circuit considered the above issue and determined that an inmate's First Amendment retaliation claim presents a new Bivens context. Earle v. Shreves, ___ F.3d ___, 2021 WL 896399, * 3 (4th Cir. March 10, 2021). Based upon the foregoing, the undersigned finds that Plaintiff's First Amendment retaliation claim presents a new Bivens context.

Next, the Court must determine whether Bivens should be extended to the above new context. First, the Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." Wilkie, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a Bivens action." Abbasi, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action."); Malesko, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to

provide a new Bivens remedy). Alternative remedies can include administrative, statutory, equitable, and state law remedies. First, the undersigned finds that Plaintiff had alternative remedies available to him through the BOP administrative remedy program. The BOP administrative remedy program allows inmates to seek formal review of issues relating to any aspect of his or her confinement. Second, to the extent Plaintiff alleges that retaliation resulted in improper denying of Residential Reentry Center ["RRC"] placement, Plaintiff can seek review of such by filing a Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241. Finally, if Plaintiff is being subjected to ongoing retaliation, he could seek injunctive relief. See 18 U.S.C § 3626(a)(2); also see Malesko, 534 U.S. at 74, 122 S.Ct. at 523(stating that "unlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means' for preventing entities from acting unconstitutionally"); Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)(recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"). Thus, the undersigned finds that Plaintiff has alternative remedies available to address his allegations of retaliation. See Earle, supra, ___ F.3d at ___, 2021 WL 896399, * 5("[W]hile the absence of a *Bivens* remedy foreclosed any claims for monetary compensation, there are nonetheless other avenues available to inmate that offer the possibility of meaning remedial relief for retaliatory discipline."); Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018)(finding the inmate had alternative remedies available to address his First Amendment retaliation claim via the BOP's administrative remedy process, review of the incident report pursuant to Section 541.7, and under state law); Reid v. United States, 2018 WL 1588264, * 2 (E.D.Cal. April 2, 2018)(finding inmate had alternative remedies available through the BOP's administrative remedy program, under the Federal Tort Claims Act, a Section 2241

petition for writ of *habeas corpus*, and <u>Bivens</u> to the extent that any alleged retaliation took the form of conduct that has already been determined by the Supreme Court to be actionable under <u>Bivens</u>); <u>Muhammad v. Gehrke</u>, 2018 WL 1334936, * 4 (S.D.Ind. March 15, 2018)(finding inmate had alternative remedies available through the BOP's administrative remedy program, *habeas corpus*, and <u>Bivens</u> to the extent that any alleged retaliation took the form of conduct that has already been determined by the Supreme Court to be actionable under <u>Bivens</u>); <u>Gonzalez v. Hasty</u>, 269 F.Supp.3d 45, 60 (E.D.N.Y. Sept. 18, 2017)(finding that inmate had two alternative remedies, the filing of administrative complaints and a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241; <u>Andrews v. Miner</u>, 2017 WL 7688266, * 4 (N.D.Ala. Aug. 25, 2017)(finding that the inmate had alternative remedies via the filing of a <u>Bivens</u> claim for excessive force, the BOP's administrative remedy process, and under the Federal Tort Claims Act).

Irrespective of whether an alternative remedy exists, a <u>Bivens</u> remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" <u>Abbasi</u>, 137 S.Ct. at 1857(quoting <u>Carlson</u>, 446 U.S at 18, 100 S.Ct. 1468). Although the Supreme Court has not defined what constitutes "special factors counselling hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." <u>Id.</u> at 1857-58. Put simply, "a factor must cause a court to hesitate before answering that question in the affirmative." <u>Id.</u> at 1858. "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." <u>Id.</u> at 1865. The <u>Abassi</u> Court explained that since Congress did not provide for a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggest Congress chose

not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." Id. The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.

Id. The PLRA's exhaustion requirement clearly applies to Bivens actions. Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits." Jones v. Bock, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798 (2007)(citing Porter v. Nussle, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court has stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Turner v. Safely, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)(citation omitted); also see Earle, supra, ___ F.3d at ___, 2021 WL 896399, * 5("[T]he recognition of a *Bivens* remedy in this case would work a significant intrusion into the area of prison management that demands quick response and flexibility, and it could expose prison officials to an influx of manufactured claims.") The Supreme Court explained that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Turner, supra, 482 U.S. at 84, 107 S.Ct. at 2259. Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." Id., 482 U.S. at 85, 107 S.Ct. at 2259; also see Earle, supra, ___ F.3d at ___, 2021 WL 896399, * 4("Under these circumstances, we believe that

11

Congress, not the Judiciary, is in the best position to 'weigh the costs and benefits of allowing a damage action to proceed."). Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding <u>Bivens</u> to Plaintiff's First Amendment retaliation claim. <u>See</u> <u>Reid</u>, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim); <u>Gehrke</u>, 2018 WL 1334936 at * 4(same); <u>Gonzalez</u>, 269 F.Supp.3d at 61(same).

Furthermore, the <u>Abbasi</u> Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." <u>Abbasi</u>, 137 U.S. at 1858. The impact on governmental operations systemwide include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." <u>Id.</u> The Supreme Court has emphasized that "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." <u>Wilkie</u>, 551 U.S. at 562, 127 S.Ct. 2588(quoting <u>Bush</u>, 462 U.S at 389, 103 S.Ct. 2404). In <u>Abbasi</u>, the Supreme Court further explained as follows:

> Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government. In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

<u>Abbasi</u>, 137 U.S. at 1856. The undersigned notes that expanding <u>Bivens</u> to allow a First Amendment retaliation claim by inmates would clearly result in an increase of suits by inmates. This increase in suits would result in increased litigation costs to the Government and impose a

burden upon individual employees to defend such claims. A First Amendment retaliation claim requires an inquiry into a defendant's subjective state of mind, which often results in an issue of material fact that cannot be resolved at the dispositive motion stage. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(*en banc*)(citations omitted)(An inmate's claim of retaliation must be treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."). The consequence of the existence of an issue of material fact is the need for a trial, which results in further litigation costs to the Government. See Gonzalez v. Bendet, 2018 WL 1524752, * 4 (S.D.S.D. March 28, 2018)(finding "that the cost, time, and energy associated with defending a *Bivens* action brought by an inmate for an action based on retaliation under the First Amendment against a federal employee are significant" and constitute a special factor counselling hesitation); Andrews, 2017 WL 7688266, * 4 – 5(same). Accordingly, the undersigned finds there are special factors counselling hesitation as to the expansion of Bivens to a First Amendment retaliation claim. See Earle, supra, ___ F.3d at ___, 2021 WL 896399, * 4 - 5. Based upon the foregoing, the undersigned respectfully recommends that the District Court find that Plaintiff has failed to state a claim upon which relief cannot be granted concerning his retaliation claim.

**B.    Due Process:**

Next, Plaintiff appears to argue that he has a protected interest in placement at FCI Petersburg, which is closer to his release area. (Document No. 10, p. 7.) Neither Section 3621(b) nor the BOP's Program Statement (P.S. 5100.08) contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to an inmate's right to a particular security classification. Title 18 U.S.C. § 3621(b) clearly vests the BOP with broad discretionary authority as to prisoners' placement and classification while incarcerated. 18 U.S.C. § 3621. The

language of this statute which provides that the "Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable," is clearly permissive; the statute does not *mandate* that the BOP place a prisoner in a certain facility.[2] Additionally, P.S. 5100.08 allows the BOP to use its "professional judgment" in deciding an inmate's classification. Specifically, P.S. 5100.08[3] states as follows:

> It should be clearly understood that the Custody Classification Form only recommends an inmate's custody. The Unit Team and/or Warden is the final review authority. The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines.

P.S. 5100.08, Chapter 6, p. 1. Thus, the "classification and transfer of inmates among authorized institutions is peculiarly an administrative function fully within the discretion given to prison officials." O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991); also see Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)(stating that "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional

---

[2]  Title 18 U.S.C. § 3621 provides that the BOP may consider the following in determining placement of prisoners:
>  (1) the resources of the facility contemplated;
>  (2) the nature and circumstances of the offense;
>  (3) the history and characteristics of the prisoner;
>  (4) any statement by the court state imposed the sentence - -
>>  (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>  (B) recommending a type of penal or correctional facility as appropriate; and
>  (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 994(a)(2) of Title 28.

[3]  P.S. 5100.08 sets forth the BOP's policies and procedures for the inmate classification system. P.S. 5100.08 provides that "classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society."

security").

Next, federal prisoners have no constitutional or inherent right to receive a particular security or custody classification. See Moody, 429 U.S. at 88, n. 9, 97 S.Ct. at 279, n. 9("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . .  And is not otherwise violative of the Constitution." Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Posey v. Dewalt, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), appeal dismissed by, 215 F.3d 1320 (4th Cir. 2000), cert. denied, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP").

Finally, the Court lacks authority to grant a request that this Court enter an order transferring Plaintiff to a different prison facility. As stated above, the classification and transfer of federal prisoners falls within the broad discretion of the BOP and Courts lack authority to order

that a prisoner be confined to any particular institution. <u>See</u> 18 U.S.C. § 3621(b)(the BOP shall designate the place of an inmate's confinement); <u>also see</u> <u>McKune v. Lile</u>, 536 U.S. 24, 40, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002)("It is well settled that the decision where to house inmates is at the core of prison administrators'' expertise."); <u>Meachum v. Farno</u>, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(the transfer of a convicted and sentenced inmate is within the sound discretion of the BOP); <u>United States v. Williams</u>, 65 F.3d 301, 307 (2nd Cir. 1995)("A sentencing court has no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons."); <u>Milhouse v. O'Brien</u>, 2014 WL 12521373, (N.D.W.Va. Feb. 25, 2014)(denying plaintiff's motion for temporary or preliminary injunction where plaintiff failed to satisfy the first *Winter's* factor because he could not succeed on his request for a transfer to a different prison facility); <u>Hinton v. Federal Bureau of Prisons</u>, 2009 WL 3347158, * 4 n. 5 (S.D.W.Va. Oct. 14, 2009)(J. Johnston)("Inmates . . . have no constitutional right to be housed in any particular prison or jail, regardless of security classification."). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a claim for which relief can be granted.

**C.    Eighth Amendment:**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), <u>rev'd on other grounds</u>, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. <u>See</u> <u>Pressly v. Hutto</u>, 816 F.2d 977, 979 (4th Cir. 1987); <u>Moore v. Winebrenner</u>, 927 F.2d 1312, 1316 (4th Cir. 1991) <u>cert. denied</u>, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that

supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") Therefore, Plaintiff must first allege and eventually establish an objectively "sufficiently serious" deprivation. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837,

17

114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that there was a substantial risk to Plaintiff's health or safety and that Defendant disregarded the serious physical consequences.

In his Amended Complaint, Plaintiff alleges that Defendants "placed his life in danger" by transferring Plaintiff to FCI Beckley "because there were no medical records that followed." (Document No. 10, p. 4.) Plaintiff's conclusory allegation that his life was placed in danger is insufficient to state a cognizable claim of deliberate indifference. First, Plaintiff does not allege that he is suffering any medical illness or is in the need of any medical care. Second, Plaintiff does not set forth any allegation of each Defendant's consciousness of a risk of harm to Plaintiff. Specifically, Plaintiff has not established that Defendants knew of, and disregarded, Plaintiff's need for medical treatment. Based upon the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim of deliberate indifference.

**2.**    **Plaintiff's Motion for Temporary Injunction:**

In his Motion for Temporary Injunction, Plaintiff appears to request that Defendants be prevented from "further tampering with the legal mail." (Document No. 11.) Plaintiff contends that Defendant have "tampered" with his legal mail because he has received at least two mailings from this Court that were delayed by two-weeks. (Id.) Plaintiff explains that it was approximately a two-week period between the postmark dates and the date Plaintiff received his legal mail. (Id.)

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice

18

and the reasons supporting the claim that notice should not be required.

Fed.R. Civ. P. 65(b). Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' Granny Goose, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction *must* establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)(emphasis added). [A]ll four requirements must be satisfied." The Real Truth About Obama, Inc. v. Federal Election Commission., 575 F.3d 342, 346 (4th Cir. 2009), *judgment vacated on other grounds*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010).[4] The Fourth Circuit has explains that "[b]ecause a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." Id.

---

[4] The United States Supreme Court vacated the original decision in *Real Truth* for further consideration in light of *Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). *The Real Truth About Obama, Inc. v. Federal Election Commission*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010). The Fourth Circuit, however, reissued its opinion on Parts I and II of its opinion. *The Real Truth About Obama, Inc. v. Federal Election Commission*, 607 F.3d 355 (4th Cir. 2010).

Furthermore, the Supreme Court "rejected a standard that allowed the plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was 'inconsistent with our characterization of injunctive relief as an extraordinary remedy that may be awarded upon a clear showing that the plaintiff is entitled to such relief." Id.(citing Winters, 55 U.S. at 22, 129 S.Ct. at 375-76.) Thus, a Court may not issue a preliminary injunction or temporary restraining order "simply to eliminate a possibility of a remote future injury." Kates v. Packer, 2014 WL 1218905, * 3 (M.D.Pa. March 24, 2014)(quoting Holiday Inns of America, Inc. v. B&B Corp., 409 F.2d 614, 618 *3rd Cir. 1969)("The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat.'"). The irreparable harm alleged by movant must be "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991), *abrogation recognized on other grounds*, Sarsour v. Trump, 245 F.Supp.3d 719, n. 6 (4th Cir. 2017); also see Kates, 2014 WL 1218905 at * 3(The irreparable harm must be "actual and imminent, not merely speculative.") As the Fourth Circuit has explained, the Court is no longer required to balance the irreparable harm to the respective parties. Real Truth, 575 F.3d at 347. Rather the movant must make a clear showing that he is likely to be irreparably harmed, and the Court must "pay *particular regard* for the public consequences in employing the extraordinary remedies of an injunction." Id.(citations omitted).

For the reasons fully explained above, the undersigned has recommended that Plaintiff's Amended Complaint as to all Defendants be dismissed. Thus, Plaintiff cannot establish that he is likely to succeed on the merits. Second, Plaintiff cannot establish that he is likely to suffer irreparable harm in the absence of preliminary relief. Although Plaintiff concludes his legal mail has been "tampered" with by Defendants, Plaintiff's allegations do not support such a conclusion.

Plaintiff allegations merely support a finding that Plaintiff suffered a two-week delay in receiving two pieces of legal mail from this Court. There is no allegation supporting a finding that such a delay was caused by any misconduct by Defendants. The undersigned notes that a delay in receiving mail can be a common problem for both prisoners and non-prisoners. Additionally, it is reasonable that some delay can occur in the distribution of prisoner mail due to COVID precautions. Therefore, there is no indication that Plaintiff has suffered, or will suffer, any irreparable harm in the absence of preliminary relief. Accordingly, the undersigned finds that Plaintiff's request for injunctive relief should be denied.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Motion to Proceed *in Forma Pauperis* (Document No. 1 and 7), **DENY** Motion for Temporary Injunction (Document No. 11), **DISMISS** Plaintiff's Amended Complaint (Document No. 10), and **REMOVE** this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

21

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.
<u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155
(1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d
91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge
Volk and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to
Plaintiff, who is acting *pro se*.

Date: May 18, 2021.

Omar J. Aboulhosn
United States Magistrate Judge